**15-25-00016-CV**

ACCEPTED
15-25-00016-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/11/2025 10:59 AM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25_____-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/11/2025 10:59:21 AM
CHRISTOPHER A. PRINE
Clerk

**IN THE**

**FIFTEENTH COURT OF APPEALS**

**AUSTIN, TEXAS**

In re,

MARTY BERRY AND AXIS MIDSTREAM HOLDINGS, LLC

*Relators*

**PETITION FOR WRIT OF MANDAMUS**

Original proceeding brought from Business Court 11A,
Cause No. 24-BC11A-0025
The Honorable Sofia Adrogue, Presiding

Douglas A. Allison
State Bar No. 01083500
LAW OFFICES OF
DOUGLAS A. ALLISON
403 N. Tancahua Street
Corpus Christi, TX 78401
Telephone: (361) 888-6002
Facsimile: (361) 888-6651
Email: doug@dallisonlaw.com

COUNSEL FOR RELATORS

# IDENTITY OF PARTIES AND OF COUNSEL

Pursuant to Rules of Appellate Procedure 52.2(a), the Relators provide this list of parties and counsel:

| | |
|---|---|
| **Marty Berry and Axis Midstream Holdings, LLC** (trial court defendants) | **Relators** |
| | |
| Douglas A. Allison<br>LAW OFFICES OF DOUGLAS A. ALLISON<br>403 N Tancahua Street<br>Corpus Christi, Texas 78401<br>T: (361) 888-6002<br>F: (361) 888-6651<br>E: doug@dallisonlaw.com | Trial and Appellate Counsel |
| | |
| Vanessa Gilmore<br>ROBERTS MARKLAND, LLP<br>2555 N MacGregor Way<br>Houston, Texas 77004<br>T: (936) 261-7591<br>E: vg@robertsmarkland.com | Trial Counsel |
| | |
| **Albert Theodore Powers** (trial court plaintiff) | **Real Party-in-Interest** |
| | |
| Allistair B. Dawson<br>Mary Kate Raffetto<br>M. Jake McClellan<br>Madeline E. Gay<br>BECK REDDEN<br>1221 McKinney Street, Suite 4500<br>Houston, Texas 77010-2010<br>T: (713) 951-3700<br>E: adawson@beckredden.com | Trial Counsel for Real Party-in-Interest: |

**Allied Ports, LLC**
(trial court plaintiff)

**Real Party-in-Interest**

Roland Garcia
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
T:    (713) 374-3500
F:    (713) 374-3505
E:    garciar@gtlaw.com

Trial Counsel for
Real Party-in-Interest:

**Allen Lawrence Berry**
(trial court defendant)

**Real Party-in-Interest**

Barrett H. Reasoner
Michael R. Absmeier
L. Bruce Baldree
SydneyG. Ballesteros
GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
T:    (713) 650-8805
F:    (713) 750-0903
E:    breasoner@gibbsbruns.com

Trial Counsel for
Real Party-in-Interest:

Honorable Sofia Adroguue

**Respondent and Judge Presiding**

Texas Business Court
Eleventh Division
301 Fannin, 5th Floor
Houston, Texas 77002
T:    (713) 274-1066 (direct)
F:    (512) 463-1625 (main)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..........................................................ii

TABLE OF CONTENTS ........................................................................ iii

INDEX OF AUTHORITIES .....................................................................vi

STATEMENT OF THE CASE ................................................................. viii

STATEMENT OF JURISDICTION .......................................................... viii

STATEMENT REGARDING ORAL ARGUMENT ......................................... viii

ISSUES PRESENTED ..........................................................................ix

STATEMENT OF FACTS ........................................................................1

ARGUMENT .....................................................................................25

    *Management and Control of Berry-Related Companies*..............................25

    *Recent Events* ..........................................................................34

    Step 1..........................................................................................39

    Step 2..........................................................................................40

    Step 3..........................................................................................50

    Step 4..........................................................................................51

CONCLUSION/PRAYER .......................................................................54

CERTIFICATION OF PETITION.................................................................57

CERTIFICATION OF CONFERENCE .........................................................57

CERTIFICATE OF COMPLIANCE .............................................................58

CERTIFICATE OF SERVICE................................................................................58

VERIFICATION OF APPENDIX ........................................................................60

# INDEX OF AUTHORITIES

**CASES**

*Bailey v. Fly*,
   97 Tex. 425, 79 S. W. 299 ...................................................................48

*Benson v. Fulmore*,
   269 S.W. 71 (Tex. Comm. App.) .......................................................48

*Clevland v. Ward*,
   285 S.W. 1063 (Texas 1926) .......................................25, 47, 48, 49, 53, 54

*Connoly v. Hammond,*
   58 Tex. 11 ...........................................................................................48

*In re Coronado Energy EP Company*,
   341 S.W.3d 479, 481-482 (Tex. Civ. App. – San Antonio, 2011)..........40, 48

*Encore Enterprises v. Borderplex Realty Trust*,
   583 S.W.3d 713, 721 (Court of Appeals – El Paso, 2019) ....................25, 43

*Foster v Wright*,
   217 S.W. 1091, 1092 (Tex. Civ. App.) .......................................................48

*French v Hay*,
   89 U.S. Supreme Court, 250, 253 (1874).............................25, 47, 48, 49, 54

*Hartford Fire Ins. Co. v. City of Houston*,
   110 S.W. 973, 116 S.W. 36 (Tex. Civ. App) ................................................48

*I & G.N. Ry. Co. v. Howell.*,
   105 S.W. 560 (Tex. Civ. App.) ...................................................................48

*In re J.B. Hunt Transportation, Inc.*,
   492 S.W.3d 287, 294 (Texas 2016) ...........................................25, 43, 47, 52

*Jolley v Oliver,*,
   106 W. 1152 (Tex. Civ. App.) ...................................................................48

*Lanes, Boyce & Co. v. Sqyres,*
    45 Tex. 382 ........................................................................................48

*Latham v. Tombs*,
    32 Tex. Civ. App. 270, 73 S.W. 1060, .......................................48

*McDannell v. Cherry*,
    64 Tex. 177 ........................................................................................48

*McLean v. Speed*,
    18 N.W. 396 ......................................................................................53

*Mower v. Boyer.*,
    811 S.W.2d 560, 563 n.2 (Texas 1991) ....................................39

*Perry v. Del Rio,*
    66 S.W.3d 239, 252 (Texas 2001) .............................................43

*Phillips v. Phillips*,
    651 S.W.3d 112, 120 (Court of Appeals – Houston [14th District] 2021) ....53

*In re Puig,*
    351 S.W.3d 301,305 (Texas 2011) .............................................39

*Reagan v. Copeland*
    14 S.W. 1031......................................................................................48

*Reed v. Harris*,
    37 Tex. 167 ........................................................................................48

*Taylor v. Hulett*,
    15 Idaho 265, 97 p. 37........................................................................48

*Wyatt v. Shaw Plumbing Company*,
    760 S.W.2d 245, 248 (Tex. 1988).................25, 35, 39, 40, 43, 47, 48, 51, 52

**RULES**

Texas Rules of Civil Procedure 39.............................................21, 22, 50, 51, 54

Texas Civil Practice & Remedies Code Chapter 37..........................................19, 20

Texas Civil Practice & Remedies Code Sec. 37.006 ......................21, 22, 50, 51, 54

Texas Civil Practice & Remedies Code 39 ...................................21, 22, 50, 51, 54

## STATEMENT OF THE CASE

| | |
|---|---|
| Nature of Case: | Plaintiffs filed the underlying lawsuit seeking declaratory relief, damages for breach of contract, and injunctive relief. Relator seeks relief from an Order denting Relators' Plea in Abatement/Motion to Abate. |
| Trial Court: | The Honorable Judge Sofia Adrogue, Business Court 11th Division, Harris County, Texas. |
| Related Appeals: | None. |

## STATEMENT REGARDING ORAL ARGUMENT

Relators seek temporary relief and oral argument is requested.

## STATEMENT OF JURISDICTION

The Court has jurisdiction to issue a writ of mandamus against Respondent, who is the presiding judge of the Business Court, 11th Division, pursuant to TEX. GOVT. CODE §22.221(b).

# ISSUES PRESENTED

Whether Respondent erred by abusing its discretion by denying Relators' Plea in Abatement / Motion to Abate, given that a first-filed case is pending in Nueces County, Texas.

## STATEMENT OF FACTS

1.      On November 27, 2023, Lawrence Berry ("Lawrence") filed a lawsuit against Marty Berry ("Marty"), Robert Rickett ("Robert"), Berry GP Inc. ("GP"), "Berry Entities," and others – the ***first-filed lawsuit***. This first-filed lawsuit alleged Marty and Dennis (Lawrence's brothers) were liable for self-dealing (loaning millions of dollars ***to*** the Brothers' businesses (GP, et al)), along with other allegations relating to interests is real property.[1]

2.      On November 28, 2023, Lawrence obtained an ex parte Temporary Restraining Order ("TRO"). In part, the TRO restrained Marty, Robert, GP, Berry Entities (and others acting in concert) from "selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property . . . ."[2] This real property, in part, was held nominally in the name of Robert for benefit of

---

[1] See Appendix 1, generally and at pp. 8, 18 (Lawrence's (Plaintiffs') Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction), Cause No. 2023-81703, 333rd Judicial District, Harris County, Texas. From the top down, the Berry Companies include: Becon Inc. ("Becon," sole general partner of LDMA Limited Partnership ("LDMA"); LDMA as sole shareholder of Berry GP Inc. ("GP"); GP which directly or indirectly wholly owns/controls Berry Operating Company LLC, Berry Contracting LP, Redfish Bay Terminals Inc. ("RFB"), and many other affiliated companies. "Berry Entities," as defined in the Nueces County Lawsuit, refers to GP, Berry Operating Company LLC, and Berry Contracting LP. For all times relevant, Dennis Berry ("Dennis"), Marty Berry ("Marty"), and Lawrence Berry ("Lawrence") own in equal shares Becon, Inc., and by majority vote control LDMA, GP (by appointment of directors), and all the Berry Companies owned/controlled by GP. For all times relevant to mid-2024, Dennis, Marty, and Lawrence (collectively, the "Berry Brothers") were the only three (3) members of the board of directors of GP, thereby wholly owning/managing/controlling GP by majority vote of the board of directors of GP; and managing/controlling all Berry Companies wholly or majority owned by GP. Dennis passed in February 2025, and his surviving wife (Bonnie Berry, or "Bonnie") now controls what were Dennis' interest.

[2] Appendix 2 (Temporary Restraining Order).

1

GP adjacent to Redfish Bay Terminals Inc. ("RFB") real property[3] – collectively referred to herein as "RFB Land for Axis Project" (as more fully described, below).

3.    On December 6, 2023, Marty filed his Emergency Motion to Transfer Venue, and other documents. This Motion to Transfer venue relied, in part, upon the fact that Lawrence's lawsuit was an action that involved an "interest in real property."[4]

4.    On December 7, 2023, an Amended Temporary Restraining Order ("ATRO") "restrained [Marty, Robert, GP, Berry Entities (and others acting in concert)] from selling any of the Berry Entities' real property" and restrained Marty/GP "from modifying the composition of the Board of Directors of any of the Berry Entities"[5] – and confirmed "parties have agreed to entry of a court order granting . . . [Marty's] Motion to Transfer Venue" to Nueces County, Texas.[6]

---

[3] Appendix 1, at p. 8, 18; see also Appendix 55, at p. 2; referring to its Exhibit numbers 2 (slide 32), 3, and 4; Exhibit 2 (slide 32) shows real property needed to develop the Axis/LSP projects in such manner as complies with the terms of the USACE Axis permit; Exhibit 3 shows real property owned by RFB and Berry GP (orange shading held nominally in name of Robert for GP); and Exhibit 4 is an overlay of Exhibits 2 and 3. These exhibits show the same real property made the subject of the Nueces County Lawsuit is – again – at issue between Marty, Lawrence, Robert, GP, and RFB in the Harris County Lawsuit.

[4] Appendix 3 (Marty's Motion to Transfer); see also Texas Civil Practice & Remedies Code, Chapter 15, section 15.011.

[5] Appendix 4 (Amended Temporary Restraining Order).

[6] Appendix 4 (Amended Temporary Restraining Order).

5.   On December 22, 2023, the first-filed lawsuit was transferred to Nueces County, Texas (sometimes referred to as the "Nueces County Lawsuit" (*first filed*));[7] and this Berry Brothers' dispute about "Berry Entities' real property" and control of the "Board of Directors of any of the Berry Entities"[8] (Lawrence's words) is still pending in Nueces County, Texas.

6.   On January 23, 2024, Marty, GP, and Berry Entities filed Counter-Plaintiff's Original Petition Asserting Counter-Claims ("Nueces County Counter-Petition") complaining of Lawrence's self-dealing (and other causes of action).[9]  Marty's, GP's, and Berry Entities' Nueces County Counter-Petition complains of how Berry Entities seeded capital to Lawrence which – in turn – "became seed-money/assets . . . for several of the Berry-Related Entities[10] (the "Investment");" but that "[Lawrence] has engaged a series of self-dealing transactions without notice to, consultation with, or vote (in-meeting or otherwise) of a majority of the owners/shareholders/directors of Counter-

---

[7] Appendix 5 (Order transferring case from Harris County to Nueces County).
[8] Appendix 1, at p. 2 of affidavit of Allen Lawrence Berry.
[9] See Appendix 6 (Counter-Plaintiffs' Original Petition Asserting Counter-Claims).
[10] Appendix 6, at p. 4.  The phrase "Berry-Related Entities" is defined in Lawrence's petition (Appendix 1) and in the Nueces County Counter-Petition (Appendix 6).  The Nueces County Counter-Petition then goes on to set forth a non-exhaustive list of Berry companies' assets then-known to be in dispute.  As time has passed, more Berry companies' and/or their assets (including Axis Midstream Holdings LLC ("Axis"), Redfish Bay Properties LLC ("RBP"), and Canada Project Holdings Inc. ("CPH") are the subject of disputes as between Marty, GP, RFB, and CPH, on the one hand, and Lawrence on the other hand.  The increasing number of companies/ companies' assets in dispute is revealed by the broadening scope of discovery in the first-filed lawsuit (Nueces County Lawsuit) beginning Spring, 2024, through present amendment of pleadings in the Nueces County Lawsuit.

Plaintiffs."[11]  Marty and Berry Entities sue in such Counter-Petition for conversion, breach of fiduciary duty, breach of contract, unjust enrichment, fraud, and assert other claims.[12]  As more fully discussed herein, Lawrence same wrongful conduct relating to ICI/Orca and Axis/LSP is the impetus for Counter-Plaintiffs' complaints.

7.  On March 14, 2024, Lawrence's filed his Plaintiffs' First Amended Verified Petition and Application for Temporary Restraining Order and Temporary Injunction.[13]

8.  On February 16, March 22 and March 25, 2024, the hearing on Lawrence's Application for Temporary Injunction was considered by the Honorable Judge Robert Galvan in the Nueces County Lawsuit.  Although Lawrence sought to enjoin Marty's/GP's/Berry Entities' sale of Berry Entities' real property absent Lawrence's sole approval (including RFB Land for Axis Project),[14] the Honorable Judge Robert Galvan did not enjoin sale of any real property (but instead ruled "there must be 48 hours' notice to all of the Board members; whoever they may be at the time").[15]  Although Lawrence then sought to enjoin any change of who served on GP's/Berry Entities' board of directors

---

[11] Appendix 6, at pp. 6-7.
[12] Appendix 6, at pp. 3, 7-15.
[13] Appendix 56.
[14] Appendix 2 (TRO), Appendix 4 (ATRO), and Appendix 56, at p.26, 31
[15] Appendix 7, at p. 3.

(controlling all Berry companies),[16] Lawrence's requested relief was denied. The Honorable Judge Robert Galvan ruled " . . . the Court has heard evidence over a three-day period. Temporary injunction requested. Bylaws provide for the removal and appointment of a Board of Directors, so I'm not gonna interfere with that . . . ."[17] Real-parties-in-interest now seek to have the Honorable Judge Sofia Adrogue reconsider Judge Robert Galvan's ruling regarding sale of GP's and RFB's real property (e.g., RFB Land for Axis Project); and reconsider Judge Robert Galvan's ruling which allows GP to govern itself, and govern its affiliated companies by appointment of directors, managers, and officers (e.g., RFB and CPH (ownership not in dispute), and Axis (ownership in dispute).[18]

---

[16] Appendix 4 (ATRO), and Appendix 56, at pp. 26, 31. Again, Lawrence had long served as one (1) of three (3) who controlled GP, and thereby always able to vote on management (control) issues. Lawrence's Application for Temporary Injunction sought to preclude GP and all other Berry companies from removing Lawrence as director/officer of the GP and affiliated companies. Lawrence's request was denied, as the court upheld GP's and affiliated companies' ability to appoint/remove directors/officers – as permitted the bylaws/operating agreements of each entity.

[17] Appendix 7, at p. 3. Of course, Judge Galvan's rulings on Lawrence's Application for Temporary Injunction makes clear that Lawrence may be removed from any of the Berry Entities' board of directors, and that Lawrence – therefore – may have no voice in making decisions about Berry companies' sale of real property.

[18] Compare Appendix 2 (TRO in Nueces County Lawsuit), Appendix 4 (ATRO in Harris County Lawsuit), and Appendix 7 (Judge Galvan's ruling on Lawrence's Application for Temporary Injunction); with Appendix 25 (TRO2 in Harris County Lawsuit) and Appendix 57 (proposed Order on Temporary Injunction in Harris County Lawsuit). See also Appendix 41 (GP's Supplemental and Third-Party Petition), demonstrating conflict between GP and Lone Star Ports Enterprises LLC ("LSPE"); and Appendix 49 (Intervenors' Original Petition in Intervention), demonstrating conflict between RFB and RBP – and demonstrating conflict between CPH and HIP.

9. On May 8, 2024, the Berry Entities propounded discovery in the Nueces County Lawsuit to Lawrence. In part, these Requests for Production defined "Berry-Related Companies" to mean the "Allen Lawrence Berry 2007 Trust, . . . Gansevoort Investments LLC, . . . Axis Midstream Holdings LLC ("Axis"), Lone Star Ports LLC ("Lone Star"), . . . and Midway Junction Properties LLC ("Midway"). The Berry Entities' formal, legal discovery in the *first-filed* Nueces County Lawsuit requested production of Axis' documents (Articles of Incorporation, Certificate of Organization, Operating Agreement, Organizational Meeting documents, Articles of Organization, Membership Interest Certificate, Membership Interest transfer ledger, and Meeting Minutes for each and every meeting of Axis); and requested production of Axis' "Current Balance Sheet," "consolidated financial statement," "most recent annual Profit and Loss statement," and signed "financial statement." Similarly, the Berry Entities' formal, legal discovery in the *first-filed* Nueces County Lawsuit requested production of Lone Star's documents (Articles of Incorporation, Certificate of Organization, Operating Agreement, Organizational Meeting documents, Articles of Organization, Membership Interest Certificate, Membership Interest transfer ledger, and Meeting Minutes for each and every meeting of Lone Star); and requested production of Lone Star's "Current Balance Sheet," "consolidated financial

6

statement," "most recent annual Profit and Loss statement," and signed "financial statement." Moreover, the Berry Entities' formal, legal discovery in the *first-filed* Nueces County Lawsuit requested production of Midway's documents (Articles of Incorporation, Certificate of Organization, Operating Agreement, Organizational Meeting documents, Articles of Organization, Membership Interest Certificate, Membership Interest transfer ledger, and Meeting Minutes for each and every meeting of Midway); and requested production of Midway's "Current Balance Sheet," "consolidated financial statement," "most recent annual Profit and Loss statement," and signed "financial statement."[19]

10.   Until October 31, 2024, the Nueces County Lawsuit had been on-going within a legal context that always had made clear GP's ownership and control of Axis:

- November 30, 2017:  All of Axis' membership interest and control of Axis transferred to Berry GP (not in dispute);[20]

- December 1, 2017:  Axis' bank account established at IBC Bank (same bank used by GP), by signatures of Marty, Lawrence, and Ed Martin

---

[19] Appendix 9, at pp. 17, 24, and 26.  Compare to Appendix 51 (Powers'/Allied Ports LLC's organizational chart), showing how Nueces County Lawsuit legal discovery was directly inquiring about companies made the subject of the later-in-time filed Harris County Lawsuit.
[20] Appendix 10.

(then-CEO of GP).[21] This bank account continued to exist for all years pertinent to this dispute (see IBC bank record for same Axis account referenced below).

- December 6, 2017: Change in Registered Office/Agent filed with Texas Secretary of State, naming Charles A. Vanaman (Berry Entity employee) as new registered agent for Axis; and identifying 1414 Valero Way, Corpus Christi, Texas as new business address for Axis (Axis' new business address same as GP's business address).[22]

- February 28, 2018: GP, through Berry Entities, began making payments in support of Axis/LSP projects (financial ledger showing millions invested omitted as sensitive document);[23]

- 2018 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office is 1414 Corn Product Road ("Corn Products" now called "Valero Way"), Corpus Christi, Texas (again, Axis' principal office address is same as GP's principal office address); (2) Axis' principal place of business is 1414 Corn Product Road, Corpus Christi, Texas (also GP's principal place of business); (3) Axis'

---

[21] Appendix 11.
[22] Appendix 12.
[23] Without reference to the complete ledger, testimony confirms that GP, and its affiliated companies, have invested millions of dollars in the Axis/LSP projects. Appendix 44 (will be supplemented).

President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.00"); (5) Axis' registered agent is Charles Vanaman (Berry Entity employee); and (6) all signed by Diane Decou (GP's CFO).[24]

- February 4, 2020: Change in Registered Office/Agent filed with Texas Secretary of State, naming Mike Hummell (GP General Counsel) as new registered agent for Axis; and no change in the business address of Axis (1414 Valero Way, Corpus Christi, Texas).[25]

- Year End October 31, 2021 (Report Year 2022):
  - Texas Franchise Tax Report filing for GP and subsidiaries show "Axis Midstream Holdings LLC" as an "affiliate" of GP – as

---

[24] Appendix 13.
[25] Appendix 14.

9

such GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

- o Same Texas Franchise Tax Report document shows GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

- o Same Texas Franchise Tax Report document shows Axis Midstream Holdings LLC's business address as 1414 Valero Way, Corpus Christi, Texas, and list three (3) Managers: Lawrence, Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the last page of the Texas Franchise Tax Report states (Year 2022): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."[26]

- 2021 Texas Franchise Tax Public Information Report evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty and Dennis; (4) that "Name of owned (parent)

---

[26] Appendix 15.

10

corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell  (Berry GP's and Axis' General Counsel); and (6) all signed by Diane Decou (GP's CFO).[27]

- Year End October 31, 2022 (Report Year 2023):

    o Texas Franchise Tax Report filing for GP and subsidiaries shows "Axis Midstream Holdings LLC" as an "affiliate" of GP – as such, GP is performing compliance reporting for "Axis Midstream Holdings LLC;"

    o Same Texas Franchise Tax Report document shows GP's "Percentage of Ownership" of "Axis Midstream Holdings LLC" is "100.000."

    o Same Texas Franchise Tax Report document shows Axis' business address is 1414 Valero Way, Corpus Christi, Texas (still GP's business address), and list three (3) Managers: Lawrence,

---

[27] Appendix 16.

11

Marty, and Dennis – and, again, identify "Berry GP Inc." as having a "Percentage of Ownership" of "100.000."

- o Finally, the footnote on the last page of Texas Franchise Tax Report states (Report Year 2023): "AXIS MIDSTREAM (FEIN: 82-XXXX615) IS OWNED 100% BY BERRY GP, INC. . . . ."[28]

- November 29, 2022, Tonja Fulghum, Executive Assistant to Lawrence Berry, emailed Mike Hummell (General Counsel for GP and Axis) to "correct" documentation for Axis Midstream Holdings LLC to reflect GP's ownership (email exchanges making clear that Tonja believes Axis is a GP owned company).[29]

- 2022 Texas Franchise Tax Public Information Report (signed January 24, 2023) evidencing: (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, Jim Klein is CFO, and Crissy

---

[28] Appendix 17.
[29] Appendix 18.

Hinojosa is Secretary (all Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.0"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by Emily Smith (Berry Entity employee).[30]

- 2024 Texas Franchise Tax Public Information Report[31] evidencing (signed November 15, 2024): (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (also Berry GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell

---

[30] Appendix 19.
[31] Appendix 61: 2024 Axis Midstream Holdings, LLC Texas Franchise Tax Public Information Report.

13

(Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (Berry Entity employee).

- 2023 Texas Franchise Tax Public Information Report evidencing (signed November 15, 2023): (1) Axis' principal office at 1414 Valero Way, Corpus Christi, Texas (still GP's principal office address); (2) Axis' principal place of business at 1414 Valero Way, Corpus Christi, Texas (still GP's principal place of business address); (3) Axis' President is Lawrence, and Vice-Presidents are Marty, Dennis, Jim Klein, Robert Powers, and Mike Hummell (the last three (3) are Berry Entity employees); (4) that Mike Hummell is General Counsel, and Jim Klein is CFO (both Berry Entity employees); (5) that the "Name of owned (parent) corporation . . ." is "Berry GP Inc." ("Percentage of Ownership – 100.000"); (5) Axis' registered agent is Mike Hummell (Berry GP's and Axis' General Counsel); and (6) all signed by James Klein (GP CFO).[32]

- January 2024: IBC Bank account records[33] show Axis Midstream Holdings LLC's address as 1414 Valero Way, Corpus Christi, Texas (still same as GP's

---

[32] Appendix 20.
[33] Appendix 21. IBC Bank record for January 2024 selected as exhibit, although each month's statement reveals the same information. This Axis bank account has more recently been closed.

address), and reconciliation of IBC account record accomplished by Berry Entity employees (further confirming Axis is a GP owned company).

- Effective April 3, 2024: Texas Secretary of State document confirming Axis' officers: Lawrence as President; Dennis, Marty, Robert Powers, Mike Hummell, and James Klein as Vice-Presidents; James Klein as CFO; and Mike Hummell as General Counsel.[34]

- November 4, 2024: Texas Secretary of State document confirming Mike Hummell (General Counsel for GP and Axis) as registered agent for Axis.[35]

On the one hand, the Nueces County Counter Petition,[36] Counter-Plaintiffs' First Amended Petition Asserting Counter-Claims (Nueces County),[37] and on-going legal discovery efforts in the Nueces County Lawsuit[38] reveal Marty's, GP's, Berry Entities' concerns about assuring Axis, Lone Star, Midway, and several other Berry Brothers' companies were properly accounted for. On the other hand, documents on file with the Texas Secretary of State demonstrate GP's quiet ownership and control of Axis (thus supporting a belief/hope that the Axis/Lone Star/Midway concerns might be resolved without contentious litigation).

---

[34] Appendix 58.
[35] Appendix 22.
[36] Appendix 6.
[37] Appendix 8.
[38] Appendix 9, at pp. 17, 24, and 26.

11. On August 6, 2024, Marty, Lawrence, Bonnie, and others met to discuss the status of Axis Midstream Holdings LLC (its ownership within the Berry GP structure, and control of Axis). The transcript of the discussion is part of the Business Court record.[39]

12. On October 31, 2024, approximately a year after the first-filed Nueces County Lawsuit, Allied Ports LLC and Albert Theodore ("Ted") Powers, in alignment with Lawrence Berry, filed their Plaintiffs' Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction (Cause No. 2024-76060, 215TH Judicial District Court; removed to Business Court, Eleventh Division, now Cause No. 24-BC11A-0025 – sometimes referred to as the "Harris County Lawsuit").[40] This document may be referred to as Allied Port's Petition.

13. Allied Ports Petition concedes Lawrence is a friendly defendant to Plaintiffs' lawsuit: "[Defendants Marty and Bonnie] have made clear they will not honor their agreements [with Plaintiffs] even though their own brother Defendant Allen Lawrence Berry ("Lawrence") acknowledges Plaintiffs' interests."[41] Allied Ports LLC, Ted Powers, and Lawrence Berry are the real-parties-in-interest.

---

[39] Appendix 23.
[40] Appendix 24.
[41] Appendix 24, at p. 1.

14. On or about October 31, 2024, real parties-in-interest secured an ex parte Temporary Restraining Order ("TRO2"). This TRO2 – with the clear record of Berry GP's ownership/control of Axis as demonstrated by Texas Secretary of State filings (above) – enjoined Marty, Bonnie, Axis, and others from:

- "Holding the "Meeting of Owners" of Axis noticed for November 6, 2024;"

- "Holding any meetings that in any way seek to affect the management or ownership interest in Axis or any other entity, property, or tangible or intangible rights associated with the Project until further order of this Court" (inclusive of RFB Land for Axis Project owned by GP and RFB);

- "Changing, altering, or transferring in any way the management of Axis or any other entity associated with the Project until further order of the Court;"

- "Changing, altering, or transferring in any way the ownership, property, or tangible or intangible rights of any entity associated with the Project until further Order of the Court."[42]

TRO2 enjoined Marty, Bonnie, GP, and Axis (and those acting in concert) from taking the same actions that Judge Galvan has previously refused to enjoin (except to the extent that Judge Galvan did enjoin sale of Berry

---

[42] Appendix 25 (TRO2).

17

Entities' (GP's) real property without 48-hours' notice to GP directors, whomever such directors may then be).[43]

15. On November 8, 2024, Marty (Relator) filed his Plea in Abatement/Motion to Abate ("Plea"). Marty's/Relator's Plea argues that the first-filed Nueces County Lawsuit acquired dominant jurisdiction of the disputes (including disputes between Berry brothers) inherently intertwined/interrelated with the Harris County Lawsuit (now pending in Business Court); and that the second-filed action (Harris County Lawsuit) is properly abated.[44]

16. On November 12, 2024, Real parties-in-interest (Allied Ports LLC, Ted Powers, and Lawrence Berry) filed responses to Marty's/Relator's Plea, and argued that the two (2) lawsuits are not inherently intertwined/interrelated.[45]

17. On December 4, 2024, Relators (Marty, Bonnie, and Axis) filed Defendants' Combined Reply to Allied LLC/Ted/Lawrence's Response to Plea in Abatement (Defendants' Combined Reply).[46] In part, the Defendants' Combined Reply showcased how the same real property at issue in the Nueces County Lawsuit remains at issue in the Harris County Lawsuit,[47] and further

---

[43] Compare Appendix 7 at p. 3, with Appendix 25.
[44] Appendix 26.
[45] See Appendix 27, at pp. 6, 9.
[46] Appendix 28.
[47] Appendix 55, at p. 8; referring to its Exhibit numbers 2 (slide 32), 3, and 4; Exhibit 2 5) shows real property needed to develop the Axis/LSP projects in such manner as complies with the terms of the USACE Axis permit; Exhibit 3 shows real property owned by RFB and Berry GP (orange shading held nominally in name of Robert for GP); and Exhibit 4 is an overlay of Exhibits 2 and

18

showcased the control battles (disputes related to corporate governance) between Marty, Bonnie, and Lawrence.[48]

18. On December 3, 2024, Marty, GP, and the Berry Entities filed Counter-Plaintiffs' Second Amended Original Petition Asserting Counter-Claims ("Counter-Plaintiffs' Second Petition").[49] A red-line version of the Counter-Plaintiffs' Amended Counter-Claims demonstrates how few changes were made to expressly name Axis/LSP in the then-pending complaint against Lawrence in the Nueces County Lawsuit[50] (because earlier-filed complaint about Lawrence's then unknown wrongful conduct with ICI/Orca are precisely the same complaints about Lawrence's wrongful conduct with Axis/LSP). Relators (Counter-Plaintiffs therein) prayed for declaratory relief pursuant to TCPRC Chapter 37, as follows:

> "[Relaters] seek declaration that transfers/conveyances/
> contracts/Manager appointments executed/accepted
> by [Lawrence] (e.g., purportedly involving Orca Assets

---

3. These exhibits were utilized to show the same real property made the subject of the Nueces County Lawsuit is – again – at issue between Marty, Lawrence, Robert, GP, and RFB.

[48] Compare Appendix 1, Appendix 2, Appendix 7, and Appendix 8 (all in the Nueces County Lawsuit), with Appendix 24, Appendix 25, and Appendix 57 (proposed Order on Allied Port LLC's Application for Temporary Injunction). Accord Appendix 31, at p. 55. (Powers' attorney clearly recognizes that interrelationship between the two (2) competing lawsuits by acknowledging how artful wording will be required to avoid conflicting court orders: " . . . I will draft our proposed injunction in a way that it will not interfere at all with whatever the injunction that exists down in Nueces County. . . . [W]e can certainly craft an injunction that does not in any way impinge or infringe upon what the Judge Galvan, I think is his name, down in Corpus Christi, what he's doing."

[49] Appendix 29.

[50] Appendix 30 (requested from adverse counsel, will supplement).

> GP LLC, and/or Axis Midstream Holdings LLC (as wholly owned/Managed by Berry GP and/or Redfish Bay Terminals Inc.), and/or others)) without majority Board of Directors approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect."[51]

Counter-Plaintiffs Second Petition is a complaint against Lawrence whereby Marty, GP, and Berry Entities seek to recover companies/companies' assets purportedly and wrongfully transferred by Lawrence to various other entities (some via Orca, and others via Axis and LSP, and perhaps others not yet discovered for which Marty/GP/Berry Entities have a right to amend pleadings in the Nueces County Lawsuit).

19.     On December 6, 2024, Relators' Plea was set for hearing, and its merits fully argued before the Honorable Sofia Adrogue.[52]

20.     On December 31, 2024, the Honorable Sofia Adrogue requested additional briefing.[53] Relators submitted additional briefing.[54] Real-parties-in-interest (Allied Ports LLC and Ted Powers) submitted additional briefing.[55] Real-party-in-interest (Lawrence) submitted additional briefing.[56]

---

[51] Appendix 29, at p. 17; Appendix 30 (document requested from adverse counsel, will supplement) see also TCPRC Chapter 37.
[52] Appendix 31.
[53] Appendix 32.
[54] Appendix 33.
[55] Appendix 34.
[56] Appendix 35.

21. On January 17, 2025, the Honorable Sofia Adrogue entered the Order[57] made the subject of this mandamus proceeding.

22. On January 21, 2025, Counter-Plaintiff GP filed a Verified Application for Temporary Restraining Order and Application for Temporary Injunction (in the Nueces County Lawsuit, sometimes referred to as the "GP's Nueces Application").[58] Lawrence filed his Response in Opposition to Application for Temporary Restraining Order and Temporary Injunction (Lawrence's Nueces Response)[59] After hearing,[60] the request for relief was denied.[61]

23. On January 28, 2025, Bonnie Berry filed an (Emergency) Plea in Abatement/Motion to Abate (in this Harris County Lawsuit) pursuant to Texas Rule of Civil Procedure ("TRCP") 39 and Texas Civil Practice & Remedies Code section 37.006.[62] To date, the Business Court has not ruled on this (Emergency) Plea in Abatement/Motion to Abate.

24. On January 28, 2025, GP filed GP's Counter-Plaintiffs' Supplemental and Third-Party Petition (in the Nueces County Lawsuit) adding Lone Star Ports Enterprises LLC ("LSPE") as a party in the Nueces County Lawsuit – and requesting that any purported transfers of Axis out of GP to any other entity

---

[57] Appendix 36.
[58] Appendix 37.
[59] Appendix 53.
[60] Appendix 38.
[61] Appendix 39 (Judge Galvan's Order denying requested relief).
[62] Appendix 40.

21

be declared "void, void ab initio, voidable, invalid, and/or of no legal force or effect."[63] This same relief was requested by GP in the earlier-filed Counter-Plaintiffs' Second Petition,[64] but the supplemental and third-party petition added LSPE as a named-party (given TRCP 39 and TCPRC 37.006).[65] In both pleadings (Counter-Plaintiffs' Second Petition and GP's Supplemental and Third-Party Petition), GP seeks a declaration that a purported transfer from GP to RFB is invalid; given lack of approval by majority vote of the GP board of directors – and lack of approval by majority vote of the RFB board of directors.[66] In both pleadings, GP also seeks declaration that a purported transfer from RFB to LSPE is invalid, given lack of approval by majority vote of the RFB board of directors (again, RFB is GP's wholly owned subsidiary).[67]

---

[63] Appendix 41.

[64] Appendix 29.

[65] Appendix 41; TRCP 39; and TCPRC 37.006.

[66] Appendix 29; Appendix 41; see also Appendix 42 (purported transfer document); Appendix 43 (GP bylaws requiring majority vote); and Appendix 44, (testimony of Lawrence confirming approval by majority vote of Berry GP and RFB board of directors did not occur) (to be supplemented when transcript is made available from court reporter).

[67] Appendix 45 (purported transfer document); Appendix 46 (RFB bylaws requiring majority vote); and Appendix 44, (testimony of Lawrence confirming approval by majority vote of RFB board of directors did not occur) (to be supplemented when transcript is made available from court reporter).

25. The hearing on real-parties-in-interest (Allied Ports LLC and Ted Powers) Application for Temporary Injunction commenced on January 29, 2025,[68] and is scheduled to resume on February 14, 2025.[69]

26. During the course of the hearing in Business Court (to date), evidence reveals disagreements related to the following matters (this list is not comprehensive):

- Whether Axis is owned by Berry GP or RFB (as claimed by Marty, Bonnie, GP, RFB, and Axis),[70] or by LSPE (as claimed by real-parties-in-interest);[71]

- Whether RFB Land for Axis Project is owned/controlled by RFB (as claimed by Marty, Bonnie, GP, RFB, and Axis),[72] or by RBP (as claimed by real-parties-in-interest);[73]

- Whether CPH holds lease to approximately sixty-two (62) acres of real property on Harbor Island, Nueces County, Texas – the "CPH Lease Tract" (as claimed by Marty, Bonnie, GP, CPH, and Axis),[74] or by Harbor Island Properties LLC ("HIP") (as claimed by real-parties-in-interest).[75]

---

[68] Appendix 59; Appendix 48; and Appendix 47 (transcript of proceeding having occurred on January 29 and January 30, 2025, with exhibits) (to be supplemented when transcript has been made available from court reporter).

[69] Appendix 48

[70] Appendix 29; Appendix 41.

[71] Appendix 47 (to be supplemented when transcript is made available from court reporter)

[72] Appendix 49.

[73] Appendix 50 (email claiming RFB real property as being owned by RBP); see also Appendix 47 (to be supplemented when transcript is made available by court reporter)

[74] Appendix 49.

[75] Appendix 50 (email claiming RFB real property as being owned by RBP); see also Appendix 47, (to be supplemented when transcript is made available from court reporter)

27. On February 5, 2025, RFB and CPH filed their Intervenors' Original Petition in Intervention in the Nueces County Lawsuit ("RFB/CPH Intervention").[76] The RFB/CPH intervention endeavors to allow the Nueces County Lawsuit to adjudicate ownership interests/rights/control held by GP, RFB, CPH, LSPE, RBP, and HIP (none of whom are parties in the Harris County Lawsuit, although Allied Ports LLC claims an indirect interest through LSPH (not a party in any lawsuit) in LSPE, RBP, and HIP).

28. The validity of any/all transfers of any interests from GP, RFB, and/or CPH (Berry or Berry Trust companies) to LSPE, RBP, and/or HIP (entities in which Allied claims interest) is necessarily a dispute between Marty, Bonnie, and Lawrence (and/or their trusts) – and thus always were within the scope of the Nueces County Lawsuit (none of the transfer in dispute involve documents signed by Allied Ports LLC or Ted Powers, although real-parties-in-interest endeavor to drag issues within the scope of the Nueces County Lawsuit into the Harris County Lawsuit (and have thus far done so)).

---

[76] Appendix 49.

**ARGUMENT**

*Management and Control of Berry-Related Companies --*

Is this Harris County lawsuit inherently "intertwined" or "interrelated" with the Nueces County lawsuit? If the answer is "yes" (or even partly "yes"), then Texas law informs us that the second-filed action (pending now in the Business Court) is properly abated.[77] Abatement allows the trial judge in the first-filed action to exhaust remedies,[78] and then the second-filed action may thereafter move forward. Relators would show that the record overwhelmingly demonstrates that the dispute made the subject of the first-filed lawsuit (Nueces County Lawsuit) is inherently intertwined/interrelated with the second-filed lawsuit (Harris County Lawsuit).[79] As such, mandamus relief is appropriate: "[t]he default rule thus tilts the playing field in favor of according dominant jurisdiction to the court in which suit is first filed."[80]

In the Nueces County lawsuit (pending since November 2023),[81] Marty/Robert/GP/Berry Entities (and all those acting in concert including Dennis,

---

[77] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Tex. 1988); see also *Cleveland v. Ward,* 285 S.W. 1063 (Texas 1926).

[78] *Cleveland v. Ward, 285* S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 89 U.S. 250, 253 (1874).

[79] See all arguments, herein.

[80] *Encore Enterprises v. Borderplex Realty Trust*, 583 S.W.3d 713, 721 (Court of Appeals – El Paso, 2019); citing *In re J.B. Hunt Transportation Inc.,* 492 S.W.3d 287, 294 (Texas 2016).

[81] Appendix 1 (Plaintiffs' Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction); and Appendix 5 (Order Granting Transfer of Venue from Harris County to Nueces County, Texas).

RFB, Axis, CPH, and other Berry Companies)[82] were originally restrained by TRO from "modifying the composition of the Board of Directors of any of the Berry Entities . . ."[83] This injunctive relief precluded any modification/change of governance for GP and the Berry Entities — thereby then-denying Lawrence's, Dennis', and Marty's power (via GP – sole owner of RFB, Axis (disputed) and other GP owned/controlled companies) to govern (appoint directors, managers, officers, and more).[84] Although Lawrence's ATRO (Nueces County) was temporarily crippling, Judge Galvan ruled (March 2024) on Lawrence's Application for Temporary Injunction that "[b]ylaws provide for the removal and appointment of

---

[82] From the top down, the Berry Companies include: Becon Inc. ("Becon," sole general partner of LDMA Limited Partnership ("LDMA"); LDMA as sole shareholder of Berry GP Inc. ("GP"); GP which directly or indirectly wholly owns/controls Berry Operating Company LLC, Berry Contracting LP, Redfish Bay Terminals Inc. ("RFB"), and many other affiliated companies. "Berry Entities," as defined in the Nueces County Lawsuit, refers to GP, Berry Operating Company LLC, and Berry Contracting LP. For all times relevant, Dennis Berry ("Dennis"), Marty Berry ("Marty"), and Lawrence Berry ("Lawrence") own in equal shares Becon, Inc., and by majority vote control LDMA, GP (by appointment of directors), and all the Berry Companies owned/controlled by GP. For all times relevant to mid-2024, Dennis, Marty, and Lawrence (collectively, the "Berry Brothers") were the only three (3) members of the board of directors of GP, thereby wholly owning/managing/controlling GP by majority vote of the board of directors of GP; and managing/controlling all Berry Companies wholly or majority owned by GP. Dennis passed in February 2025, and his surviving wife (Bonnie Berry, or "Bonnie") now controls what were Dennis' interest. "Axis" refers to Axis Midstream Holdings LLC, and Berry GP (alternatively RFB) claims sole ownership and sole control of Axis, but this is in dispute (real-parties-in-interest claim Axis is owned by Lone Star Ports Enterprises LLC ("LSPE") and controlled indirectly by Allied Port LLC). Canada Projects Holdings Inc. ("CPH") is owned in equal shares by the Allen Lawrence Berry Trust ("ALB Trust"), Marvin Glenn Berry Trust ("MGB Trust"), and Dennis Wayne Berry Trust ("DWB Trust"), whose trustees are respectively Lawrence, Marty, and Dennis (now Bonnie). See Appendix 54 (Organizational Chart).
[83] Appendix 4 (ATRO).
[84] Appendix 51

26

Board of Directors, so I'm not gonna interfere with that."[85]  Judge Galvan's ruling allowed Marty and Dennis (later Bonnie) – by majority vote – to remove Lawrence as director of GP and all other positions of governance/authority with Berry companies (which they (Marty/Dennis (Bonnie) did).[86]  To circumvent Judge Galvan's ruling which is supportive of Berry companies' self-governance, real-parties-in-interest filed the Harris County Lawsuit (October 31, 2024)[87] whereby Marty, Bonnie, and Axis (along with GP, RFB, and CPH, as argued by real-parties-in-interest) were by ex parte court order (TRO2) restrained from:

(1) "[h]olding the "Meeting of Owners" of Axis noticed for November 6, 2024"[88] – thereby endeavoring to forbid GP from holding any meeting for benefit of Axis (even though GP and RFB are not named parties to the Harris County Lawsuit);

(2) "[h]olding any meetings that in any way seek to affect the management or ownership of Axis or any other entity, property, or tangible or intangible rights associated with the Project . . . ."[89] – thereby endeavoring to forbid Marty, Bonnie, and Axis (along with GP, RFB, and CPH, as argued by

---

[85] Appendix 7, at p. 3
[86] Appendix 47, (transcript of proceedings: will be supplemented when transcript is made available from court reporter).
[87] Appendix 24 (Plaintiffs' [Ted Powers] Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction).
[88] Appendix 25 (Harris County Lawsuit Temporary Restraining Order, or "TRO2").
[89] Appendix 25 (Harris County Lawsuit Temporary Restraining Order, or "TRO2").

real-parties-in-interest) from holding any meeting affecting Axis (or its rights), affecting RFB's assets (all of RFB's assets, not only the RFB Land for Axis Project), or affecting CPH's assets (all of CPH's assets, not only the CPH Lease Tract on Harbor Island); and

(3) "[c]hanging, altering, or transferring in any way the management of Axis or any other entity associated with the Project . . . ."[90] – thereby endeavoring, again and in direct opposition to Judge Robert Galvan's ruling, to preclude GP, RFB, and CPH (these are definitely entities associated with the Project) from choosing their own directors and otherwise manner according to its by-laws.

By securing the ex parte TRO2, real-parties-in-interest forbid GP from holding a meeting to discuss Axis (its wholly owned affiliate according to documents filed with the Texas Secretary of State from 2017 – 2024); from holding meetings for GP, RFB, and CPH (and others) to affect their management of assets owned by GP, RFB, and CPH; and changing management of GP, RFB, and CPH (all companies definitely associated with the Project). These are the exact matters relating to

---

[90] Appendix 25 (Harris County Lawsuit Temporary Restraining Order, or "TRO2"). To be clear, the Harris County Lawsuit Temporary Restraining Order (i.e., TRO2) enjoined "any other entity associated with the Project," and this most certainly seeks to restrain GP and Berry Entities that have invested tens of millions of dollars in the Axis/Lone Star Ports LLC Project, restrain RFB whose lands are essential to development of the Project (the RFB Land for Axis Project), and restrain CPH from active management/control of the CPH Lease Tract on Harbor Island (land essential to the Project)).

governance made the subject of the ATRO and hearing on temporary injunction in the Nueces County lawsuit[91] – and these matters are presently the subject of Judge Robert Galvan's ruling.[92] Presently, real-parties-in-interest (including Lawrence) are advocating to again restrain these several Berry companies' ability to self-govern (contrary to Judge Robert Galvan's ruling allowing these several Berry companies to self-govern).[93] Lawrence's 2023 effort substantially failed with Judge Galvan,[94] yet Lawrence (with Ted Powers/Allied Ports LLC) is now engaged in an on-going effort to get a conflicting court ruling from a different judge (in Business Court).[95] It might go without saying, but two (2) different rulings from two (2) different judges with respect to how these several Berry companies may (or may not) govern themselves would be a trainwreck.[96] Judge Galvan (in the Nueces County Lawsuit) has already ruled that Marty, GP, and Berry Entities (and all those acting in concert which certainly includes RFB, Axis (in dispute), and CPH) are NOT enjoined from modifying/changing persons in positions of governance,[97] yet real-parties-in-interest

---

[91] Compare Appendix 25 (TRO2); with Appendix 4 (ATRO), Appendix 56 (Lawrence's petition on file at time of hearing on application for temporary injunction), and Appendix 7, at p. 3.

[92] Appendix 7, at p. 3.

[93] Appendix 24 ((Plaintiffs' [Ted Powers] Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction).

[94] Appendix 7, at p. 3.

[95] Appendix 52 (Plaintiffs' [Ted Powers] Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction), at pp. 13, 14.

[96] *Phillips v. Phillips,* 651 S.W.3d 112, 120 (Court of Appeals – Houston [14th District] 2021) (recognizing problem of conflicting court orders – a litigant may be complying with one court's order while disregarding or acting in contempt of another court's order).

[97] Appendix 7, at p. 3.

managed to secure (in the Harris County Lawsuit) an ex parte court ruling opposite to that which Judge Galvan has ordered (a still-active court ruling).[98] Real-parties-in-interest TRO2 has expired – and real-parties-in-interest should not be allowed another bite at the apple by proceeding in the second-filed action.[99] The second-filed Harris County Lawsuit is properly abated.

*Management and Control of Berry-Related Companies Real Property Interests –*

Both lawsuits also involve disputes and requests for injunctive relief related to 'ownership, management, and control' of some of the same real property interests.[100] In the Nueces County lawsuit, Lawrence sued Marty, GP, Robert, and other Berry Entities complaining (among other things) that Robert was acting wrongfully by holding title to real property nominally in his (Robert's) name for benefit of GP.[101] The real property held in Robert's name (for benefit of GP), along with adjacent RFB real property, is the RFB Land for Axis Project (as fully explained herein).[102] Lawrence's TRO in the Nueces County Lawsuit restrained

[98] Compare Appendix 7, at p. 3; with Appendix 25 (TRO2).

[99] Compare Appendix 7, at p. 3; with Appendix 25 (TRO2) and Appendix 52 (Plaintiffs' [Ted Powers] Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction), at pp. 13, 14.

[100] Compare Appendix 1 (Plaintiffs' [Lawrence] Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction), at p. 8; with Appendix 24 (Plaintiffs' [Ted Powers] Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction), and Exhibit 25 (TRO2)(referring to 'changing/transferring property rights').

[101] Appendix 1 (Plaintiffs' [Lawrence] Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction), at p. 8.

[102] Appendix 55, at p. 8; referring to its Exhibit numbers 2 (slide 32), 3, and 4; Exhibit 2 (slide 32) shows real property needed to develop the Axis/LSP projects in such manner as complies with

Marty/Robert/GP/Berry Entities (and those acting in concert, e.g., RFB) from "selling, mortgaging, or otherwise encumbering any of the Berry Entities' real property without approval of the sole disinterested member of the Board of Directors, Lawrence Berry."[103] In the Nueces County Lawsuit, Judge Robert Galvan then considered Lawrence's Application for Temporary Injunction to enjoin Marty/Robert/GP/Berry Entities (and RFB) from selling or encumbering real property without Lawrence's approval, and ruled that Marty/Robert/GP/Berry Entities (and RFB) were NOT enjoined in such manner requested by Lawrence (but rather board of directors were permitted by majority vote to sell/encumber real property interest after 48-hours' notice to the Berry companies' then-appointed directors[104] (for GP or RFB, as the case may be)). In the Nueces County Lawsuit, Lawrence tried to effectively seize sole control of any possible sale of GP real property (which includes RFB Land for Axis Project) – but Judge Galvan denied this relief requested by Lawrence.[105] In an effort to circumvent Judge Robert Galvan's ruling, the Harris County Lawsuit was filed to secure an ex parte Temporary

the terms of the USACE Axis permit; Exhibit 3 shows real property owned by RFB and GP (orange shading held nominally in name of Robert for GP); and Exhibit 4 is an overlay of Exhibits 2 and 3. These exhibits show the same real property made the subject of the Nueces County Lawsuit (real property in name of RFB and adjacent real property held in name of Robert for GP) is – again – at issue in this Harris County Lawsuit.

[103] Appendix 2 (TRO).

[104] Appendix 7, at p. 3.

[105] Compare Appendix 2 (TRO); with Appendix 7, at p. 3.

Restraining Order (TRO2) in the Harris County Lawsuit.[106] Although Judge Robert Galvan has already refused to enjoin selling/encumbering RFB Land for Axis Project (held in RFB's or Robert's name), real-parties-in-interest obtained injunctive relief in the second-filed Harris County Lawsuit to restrain Marty, Bonnie (along with GP, RFB, CPH, and Robert, as argued by real-parties-in-interest) from "[c]hanging, altering, or transferring in any way the . . . property . . . rights of any entity associated with the Project [GP, Axis, RFB, CPH, and other Berry Entities are certainly "associated with the Project"] . . . ."[107] Lawrence's TRO and ATRO in the Nueces County Lawsuit achieved Lawrence's objective to restrain,[108] but then his (Lawrence's) victory was taken away by Judge Robert Galvan's ruling.[109] Real-parties-in-interest then filed the second-filed Harris County Lawsuit to secure the relief Judge Galvan has (still) denied (by ex parte Temporary Restraining Order)[110] – and real-parties-in-interest now want Judge Sofia Adrogue to approve a temporary injunction which runs astray of Judge Robert Galvan's current and standing ruling (since March 2024) in the Nueces County Lawsuit.[111] Specifically, real-parties-in-interest are presently requesting further relief by their Application for Temporary

---

[106] Appendix 25 (TRO2).
[107] Compare Appendix 7, at p. 3; with Appendix 25 (TRO2).
[108] Appendix 2 and Appendix 4.
[109] Appendix 7, at p. 3.
[110] Appendix 25 (TRO2).
[111] Appendix 52 (Plaintiffs' [Ted Powers] Third Amended Verified Petition and Application for Temporary Restraining Order and Temporary Injunction).

Injunction in the Harris County Lawsuit to enjoin Marty, Bonnie, and Axis (along with GP, RFB, and CPH, as argued by real-parties-in-interest) from "[c]hanging, altering, or transferring in any way the . . . assets [real property]. . . held by the entities formed for the Project which is the subject of this lawsuit."[112]  Whereas GP (via Robert holding land for benefit of GP) owns RFB Land for Axis Project, along with RFB, granting the injunctive relief requested by real-parties-in-interest in the second-filed Harris County Lawsuit would be 100% contrary to Judge Galvan's ruling allowing GP (including RFB and Axis (disputed), both wholly owned by GP) to sell/encumber real property interests upon 48-hours' notice to its governing body.[113]  Whereas CPH holds all leasehold interest in the CPH Lease Tract on Harbor Island for the project, granting the injunctive relief requested by real-parties-in-interest in the second filed Harris County Lawsuit would be 100% contrary to Judge Galvan's ruling allowing sale/encumbrance of real property interests upon 48-hours' notice to its governing body.[114]  In the end, Judge Galvan did enjoin Berry Entities' (and all those acting in concert) selling/encumbering real property; that is, 48-hours'

---

[112] Appendix 52 (Plaintiffs' [Ted Powers] Third Amended Verified Petition and Application for Temporary Restraining Order and Temporary Injunction).

[113] Compare Appendix 52 (Plaintiffs' [Ted Powers] Third Amended Verified Petition and Application for Temporary Restraining Order and Temporary Injunction) with Appendix 7, at p. 3.

[114] Compare Appendix 52 (Plaintiffs' [Ted Powers] Third Amended Verified Petition and Application for Temporary Restraining Order and Temporary Injunction) with Appendix 7, at p. 3.  See also Appendix 47,  (transcript of proceedings: 01/29/25, revealing scope of what Powers intends to secure by request for injunctive relief) (will supplement at time transcript becomes available from court reporter); Appendix 49 (Intervenors' Original Petition in Intervention).

notice to the then-appointed board of directors is required before any sale or encumbrance[115] – but real-parties-in-interest now want their second bite at this apple to further (and completely) restrict Marty's, Bonnie's and Axis' (along with GP, RFB, and CPH, as argued by real-parties-in-interest) ability to sell/encumber real property interests.[116]   Obviously, both lawsuits involve disputes related to ownership/control of real property interests related to the Axis/LSP projects (use of the RFB Land for Axis Project), and deference to the first-filed action is Texas law (such that the Harris County Lawsuit is properly abated).

*Recent Events:*

Recent events poignantly reveal that the first-filed Nueces County Lawsuit and second-filed Harris County Lawsuit are inherently intertwined/interrelated.  In the Nueces County Lawsuit, GP filed GP's Nueces Application.[117] Lawrence filed Lawrence's Nueces Response.[118] Lawrence's Nueces Response crystalized that both cases are inherently intertwined/interrelated.

- In Lawrence's Nueces Response, Lawrence argues that "Movants Berry GP and RBT now seek to have this Court [in the Nueces County Lawsuit]

---

[115] Appendix 7, at p. 3.

[116] Appendix 7, at p. 3; Appendix 52 (Plaintiffs' [Ted Powers] Third Amended Verified Petition and Application for Temporary Restraining Order and Temporary Injunction).

[117] See Appendix 37 (Berry GP's Verified Application for Temporary Restraining Order and Temporary Injunction, sometimes referred to as "GP's Nueces Application").

[118] See Appendix 53 (Lawrence's Response in Opposition to Application for Temporary Restraining Order and Temporary Injunction, sometimes referred to as "Lawrence's Nueces Response").

34

interfere with the Business Court's jurisdiction . . . [by filing of Berry GP's Nueces Application]."[119]  This is an overt admission  that the two (2) cases seek judicial relief relating to the same dispute (i.e., a judicial determination of ownership and control of Axis).  Of course, the first-filed case cannot interfere with the jurisdiction of the second-filed case (absent one (1) of the three (3) judicially recognized exceptions to the general rule – none of which have been pleaded or exist).[120]

- In Lawrence's Nueces Response, Lawrence argues that Berry GP's Nueces Application is "related to the ownership of Axis that is the *very centerpiece* of the Injunction Hearing proceeding in Judge Adrogue's Court next week."[121] (emphasis added).  Marty, Bonnie, GP, RFB, CPH, and the Berry Entities agree with Lawrence that the Nueces County Lawsuit and Harris County Lawsuit are seeking judicial relief relating to the same dispute (i.e., ownership and control of Axis).  No party has filed any plea to the jurisdiction (or other similar plea or motion) asserting that Nueces County's Judge Robert Galvan lacks jurisdiction of GP's Nueces Application or any of the issues raised the Nueces County Lawsuit by proper pleading, nor could such a filing be meritorious.

---

[119] See Appendix 53 (Lawrence's Nueces Response), at p. 2.
[120] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Tex. 1988).
[121] See Appendix 53 (Lawrence's Nueces Response), at p. 2.

- At time of hearing on GP's Nueces Application (January 24, 2025), Lawrence – via legal counsel – argued:

> "What's at issue in that [Harris County Lawsuit] case is that Mr. Powers says that he did [have ownership] and he has documents to that effect and is asking for the [Harris County] Court there to take action as to – as to that **Axis ownership.** That's what [is] **central** to that [Harris County] case." (emphasis added).[122]

Agreed; that is, Marty, Bonnie, GP, RFB, CPH, and the Berry Entities, along with Lawrence apparently, agree that the "central" issue in the Harris County Lawsuit is "Axis ownership" (same claim being made by GP in the Nueces County Lawsuit against LSPE[123] (neither GP nor LSPE being parties to the Harris County Lawsuit)).[124]  In fact, GP is the owner of Axis, and to the extent there is disagreement about ownership of Axis, the threshold documents being scrutinized relate to GP, RFB, and Lawrence Berry.[125]  Restated:  A "central" issue in the two (2) cases is "ownership" of Axis, and the only lawsuit on file with the competing parties claiming ownership of Axis is the first-filed Nueces County Lawsuit (i.e., GP/RFB

---

[122] Appendix 38 (transcript of 01/24/25 hearing from Nueces County Lawsuit), at p. 43.
[123] Appendix 41 (GP's Supplemental and Third-Party Petition).
[124] Appendix 24.
[125] See Appendix 42 (document Lawrence/Ted Powers claims transferred Axis from GP to RFB) and Appendix 45 (document Lawrence/Ted Powers claims transferred Axis from RFB to Lone Star Ports Holdings LLC) – all parties agreeing that neither document signed with any GP or RFB Board of Directors' majority approval (as required by GP and RFB bylaws).

36

and LSPE).[126]  None of the parties in the Harris County Lawsuit claim ownership of Axis.[127]

- At time of hearing on Marty's, Bonnie's, and Axis' Plea in Abatement (in the Harris County Lawsuit, December 6, 2024), Ted Powers – via counsel – argued:

> "And you can look at the relief that is sought in the [Counter-Plaintiffs' Nueces County] petition and in the [their] counterclaim, and the court down there [in Nueces] can give all that relief and it won't have one – it won't have any bearing at all on this case.[128]  And so I think that – I think that there is no dominant jurisdiction."[129]

Relying upon the exact same "petition"[130] to which Mr. Dawson referred, GP moved for injunctive relief by filing GP's Nueces Application.[131]  Above, Mr. Dawson (for real-party-in-interest Ted Powers) argues there is no dominant jurisdiction in favor of the first-filed Nueces County Lawsuit and that Judge Galvan "can give all that

---

[126] Compare Appendix 1 (Lawrence POP, Nueces); Appendix 29 (Berry Entities' (GP, et al) Second Amended Petition); Appendix 41 (GP's Supplemental and Third-Party Petition); Appendix 49 (Intervenors' Original Petition in Intervention); with Appendix 52 (Powers/Allied Port LLC's Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction).

[127] Appendix 52 (Powers/Allied Port LLC's Verified Third Amended Petition and Application for Temporary Restraining Order and Temporary Injunction); see also Appendix 54.

[128] NOTE:  The Nueces County Lawsuit expressly prays that certain alleged transfers of Axis Midstream Holdings LLC be declared "void" – thereby confirming that Berry GP owns Axis, not Lone Star Ports Enterprises LLC (as claimed by Ted Powers).

[129] Appendix 31 (transcript of December 6, 2024, hearing), at p. 55.

[130] Appendix 29 (Counter-Plaintiffs' (GP's, et al) Second Amended Petition Asserting Counter-Claims).

[131] Appendix 37 (GP Nueces Application).

relief and it won't have . . . any bearing at all on this [Harris County Lawsuit] case"[132]

(i.e., no interrelationship) – yet Mr. Reasoner (for real-party-in-interest Lawrence)

argued in the Nueces County Lawsuit that Judge Galvan would "interfere with the

Business Court's jurisdiction . . . [by ruling upon GP's Application]."[133] Which is

it? Indeed, the two (2) cases (the Nueces County Lawsuit and Harris County

Lawsuit) are inherently interrelated/intertwined. This moment begs for relief.

*Texas Judicial Authority –*

For decades, GP – by majority vote of its Board of Directors – has governed

all of the Berry Entities (and their wholly owned affiliated entities).[134] From 2017

through November 2023, Relators have enjoyed certainty with GP's quiet ownership

and control of Axis, ownership and RFB and control of RFB assets (the RFB Land

for Axis Project),[135] and CPH's right to its leasehold estate in the CPH Lease Tract

on Harbor Island.[136] In November 2023, Lawrence filed his lawsuit (transferred and

now the first-filed Nueces County Lawsuit) – and this lawsuit is all about

---

[132] Appendix 31 (transcript of December 6, 2024, hearing), at p. 55.

[133] Appendix 53 (Lawrence's Nueces Response), at p 2.

[134] Appendix 54 (Organizational Chart).

[135] Appendix 47 (transcript of hearing, 1.29.2025-1.30.2025, Ted Powers (first notice of any ownership/control dispute related to RFB Land for Axis Permit) (to be supplemented when transcript is made available by court reporter); Appendix 50 (exhibit produced 01.30.25, as further evidence of dispute of ownership/control of RFB Land for Axis Permit).

[136] Appendix 47 (transcript of hearing, 1.29.2025-1.30.2025, Ted Powers, (first notice of any ownership/control dispute related to CPH's Lease Tract on Harbor Island); Appendix 50 (exhibit produced 01.30.25, as further evidence of dispute of ownership/control of CPHG Lease Tract on Harbor Island).

ownership/control of the many Berry Brothers' owned companies and their assets.[137]

These disputes are properly adjudicated in the Nueces County Lawsuit, while the

Harris County Lawsuit is abated (with the Powers/Allied LLC contract disputes to

be later-adjudicated). Lawrence lost his bid for control of GP, the Berry Entities,

and their affiliated companies (RFB, Axis, and others) in March 2024.[138] A year

later, Lawrence now appears as a 'friendly defendant' with Powers/Allied Ports in

an effort to re-stage the same fight for control of GP and GP's/Berry Entities'

affiliated companies' (GP, RFB and Axis) assets. The new, second-filed lawsuit is

the Harris County Lawsuit (now pending in the Texas Business Court, Eleventh

Division) which is properly abated.

**Step 1:** Relators timely requested an abatement of the second-filed lawsuit.

"Where, as here, two courts have concurrent jurisdiction to determine inherently

intertwined issues, filing a dilatory plea in abatement is the proper method for

drawing a court's attention to another court's possible dominant jurisdiction."[139]

Marty filed the Plea in Abatement/ Motion to Abate.[140] Marty, Bonnie, and Axis

---

[137] Appendix 1; Appendix 6; Appendix 29. See also Appendix 9, at pp. 17, 24, and 26; Appendix 41 (GP's Supplemental and Third-Party Petition); and Appendix 49 (Intervenors' Original Petition in Intervention).

[138] Appendix 7, at p. 3.

[139] *In re Puig*, 351 S.W.3d 201, (Texas 2011); citing *Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Texas 1991); *Wyatt v. Shaw Plumbing Company*, 760 S.W.2d 245, 247-248 (explaining that it is proper to file a plea in abatement when two inherently interrelated cases are filed in different counties).

[140] Appendix 26.

joined by further briefing of the Plea in Abatement/Motion to Abate.[141]   Relators

believe that the appropriate process has been followed in the trial court below, and

that the issue of dominant jurisdiction is now before this Honorable Fifteenth District

Court of Appeals.

Step 2:  The scope/breath of the dominant jurisdiction acquired by the trial

judge in a first-filed lawsuit is not limited by the pleadings on file in the first-filed

lawsuit at the time of the filing of the second-filed lawsuit, or limited by the parties

named in the first-filed lawsuit at the time of the filing of the second-filed lawsuit.

> "It is not required that the precise issues and all of
> the parties be included in the first filed suit before
> the second suit is filed, provided that the claims in
> the first suit can be amended to bring in all of the
> necessary and proper parties and claims."[142]

Texas law is quite clear that "claims in the first suit can be amended" by Counter-

Plaintiffs (Marty, GP, and Berry Entities) "to bring in all of the necessary and proper

parties and claims."   In the Nueces County Lawsuit, Marty, GP, and the Berry

Entities (January 2024) sued Lawrence for "conversion, breach of fiduciary duty, . .

. fraud, and other causes of action."[143]   Counter-Plaintiffs alleged that "Berry

Companies are and have been started up, owned, . . . managed, developed, operated

---

[141] Appendix 28.

[142] *In re Coronado Energy EP Company,* 341 S.W.3d 479, 481-482 (Court of Appeals - San Antonio, 2011); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988).

[143] Appendix 6, at p. 3-7.

and/or controlled at various times by and through Berry GP, and/or by and through (in part) . . . [Lawrence]."[144] This January 2024, complaint then alleged breach of fiduciary duty: that Lawrence "took substantial money/assets from Counter-Plaintiffs, and failed to invest same in the name of and/or for the benefit of Counter-Plaintiffs (thereby [Lawrence] put his own financial interest ahead of Counter-Plaintiffs' financial interest)."[145] For "Legal Damages," Marty, GP, and Berry Entities sued (January 2024) for recovery of "all harm and financial losses suffered by Counter-Plaintiffs and arising from wrongful and/or inequitable conduct of Counter-Defendant [Lawrence] . . . ."[146] It is absolutely true that the specific example repeatedly recited to in the initial counter-claims filed by Marty, GP, and Berry Entities against Lawrence was ICI/Orca[147] – and it is absolutely true that legal discovery was thereafter pursued by Marty/GP/Berry Entities to uncover other GP/Berry Entities' investment projects that were the object of Lawrence's shenanigans (to wit: Axis/LSP).[148] The hearing on Lawrence's Application for

---

[144] Appendix 6 (this description of Lawrence' course of conduct is the same for ICI/Orca as it is for Axis/Lone Star Ports LLC (all correctly labeled as self-dealing)).

[145] Appendix 6 (again, this description of Lawrence's course of conduct is the same for ICI/Orca as it is for Axis/Lone Star Ports LLC (all correctly labeled as self-dealing and breach of fiduciary duty)).

[146] Appendix 6 (this general pleading for legal damages was never specially excepted to and clearly captures Counter-Plaintiffs' losses/harm suffered as a result of Lawrence's wrongful conduct – *for both ICI/Orca and Axis/Lone Star Ports LLC*).

[147] Appendix 9.

[148] Appendix 9, at pp. 17, 24, and 26.

Temporary Injunction was concluded and ruled upon in March, 2024.[149] On May 8, 2024, GP and Berry Entities propounded 125 Requests for Production to Lawrence (in the Nueces County Lawsuit).[150] These specific discovery documents were crafted to inquire about other investments made by GP/Berry Entities through Lawrence for which there was a lack of accountability from Lawrence.[151] These specific discovery documents asked directly about ownership and control of Gansevoort Investments LLC (the company that conveyed Axis to GP), and about Axis, Lone Star Ports LLC (an Axis/LSP projects' company), Midway Junction Properties LLC (an Axis/LSP projects company), and other companies for whom accounting of assets has been lost to Lawrence.[152] For all such Berry companies, the Counter-Plaintiffs' requests for documents sought Articles of Incorporation, Certificates of Organization, Operating Agreements, Organizational Meeting documents, Articles of Organization, Membership Interest Certificates, Membership Interest transfer ledgers, Meeting Minutes, Current Balance Sheets, Consolidated Financial Statements, Profit and Loss Statements, and signed Financial Statements.[153] Lawrence's answers/responses were received on or about June 7,

---

[149] Appendix 7, at p. 3.
[150] Appendix 9.
[151] Appendix 9, at pp. 17, 24, and 26 (a review of the many Requests for Production provides evidence of Marty's/GP's/Berry Entities' deliberate effort to uncover whatever other (in addition to ICI/Orca) Lawrence-generated ownership/control disputes were looming related to GP/Berry Entities' investments).
[152] Appendix 9, at pp. 17, 24, and 26.
[153] Appendix 9, at pp. 17, 24, and 26.

2024;[154] thus revealing more of the same ICI/Orca-type wrongful conduct by Lawrence with the Axis/LSP entities/assets (GP, et al, investment).[155] Rather than jump the gun, Marty called a meeting on August 6, 2024 – and the transcript of these discussions speaks for itself (it was an effort to resolve an issue, and not create more litigation).[156]

No good deed goes unpunished, and Powers/Allied Ports LLC sued on October 31, 2024.[157] The actual filing of the second-filed Harris County Lawsuit does not overwhelm or dispose of the dominant jurisdiction of the first-filed Nueces County Lawsuit. To the contrary, Texas law understands that once the race to the courthouse has been run – the first-filed lawsuit maintains dominant jurisdiction (thus candidly, there was no need for GP/Berry Entities to urgently file their amended petition).[158] On December 3, 2024, Marty, GP, and Berry Entities filed their Counter-Plaintiffs' Second Petition – and thereby (relying upon recent discovery responses received) made the exact same complaints about Lawrence's

---

[154] Appendix 60.

[155] Appendix 60 (in the Nueces County Lawsuit, Lawrence produced documents that raised serious questions about whether Lawrence had unilaterally attempted to form entities and/or transfer GP owned entities/assets without required board of directors' approvals (from GP and/or RFB) – the exact same documents made the center of the dispute in the Harris County Lawsuit).

[156] Appendix 23.

[157] Appendix 24.

[158] *In re J.B. Hunt Transportation In*c., 492 S.W.3d 287, 300 (Texas 2016) (" . . . we even expect "a race to the courthouse, [in which case] the winner's suit should have dominant jurisdiction"); citing *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Texas 2001); see also *Encore Enterprises v. Borderplex Realty Trust*, 583 S.W.3d 713, 721 (Court of Appeals – El Paso, 2019). Compare *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248-249 (Texas 1988).

43

wrongful conduct with Axis/LSP[159] as had already been made (since January 2024) about Lawrence's wrongful conduct with ICI/Orca.[160]  In their Counter-Plaintiffs' Second Petition, Counter-Plaintiffs specifically pleaded as follows:

> "Counter-Plaintiffs, pursuant to Texas Civil Practice & Remedies Code ("TCPRC") section 37.004, seek declaration that transfers/conveyances/contracts/Manager appointments executed/accepted by Counter-Defendant L.Berry (e.g., purportedly involving Orca Assets GP LLC, and/or Axis Midstream Holdings LLC (as wholly owned/ Managed by Berry GP and/or Redfish Bay Terminal Inc.), and/or others)) without majority Board of Directors approval are void, void ab initio, voidable, invalid, and/or of no legal force or effect."[161]

On or immediately before January 28, 2025, GP realized the defect in parties given LSPE's claim to ownership of Axis – and thus properly supplemented its complaint in the Nueces County Lawsuit by filing of its supplemental and third-party petition against LSPE.[162]  On January 29/30, 2025, Marty, GP, Berry Entities, RFB, and CPH learned for the first time ever of more wrongful conduct (alleged wrongful transfers

---

[159] Appendix 29 (Counter-Plaintiffs' Second Petition); Appendix 30 (redline version of Counter-Plaintiffs' Second Petition, demonstrating how exact same conduct by Lawrence gives rise to ICI/Orca dispute and Axis/LSP dispute, to be supplemented).

[160] Compare Appendix 6, at pp. 5-7 (Counter-Plaintiffs' Original Petition Asserting Counter-Claims); with Appendix 29, at p. 17 (Counter-Plaintiffs' Second Petition) and Appendix 30, (redline version of Counter-Plaintiffs' Second Petition, to be supplemented).

[161] Appendix 29, at p. 17 (Counter-Plaintiffs' Second Petition); Appendix 30, (redline version of Counter-Plaintiffs Second Petition, to be supplemented).

[162] Appendix 41 (GP's Supplemental and Third-Party Petition).

of RFB and CPH assets),[163] and have thus added additional parties to the Nueces County Lawsuit so as to allow a full adjudication of the many issues as between Marty, GP, Berry Entities, RFB, and CPH (on the one hand) and Lawrence and the ALB Trust (on the other hand) – all in the Nueces County Lawsuit.[164] All of the Counter-Plaintiffs petitions/pleadings in the Nueces County Lawsuit flow from the original complaints against Lawrence in the Nueces County Lawsuit (that is, Lawrence's wrongful inclination to take GP's, RFB's, Axis', and other GP assets for his personal gain and benefit – for which the Nueces County Lawsuit seeks all redress since inception).

The entirety of the Nueces County Lawsuit addresses disputes as between Marty, GP, Berry Entities, RFB, and CPH (on the one hand) and Lawrence and the ALB Trust (on the other hand). Resolution of these disputes focuses upon whether: (1) Lawrence had GP Board of Directors' majority approval to transfer Axis out of GP to RFB, or not (nothing to do with Ted Powers' alleged contract);[165] (2) Dennis had RFB Board of Directors' majority approval to receive Axis on behalf of RFB,

---

[163] Appendix 47, (transcript of hearing on 01.29.25, Ted Powers (first notice of any ownership/control dispute related to RFB Land for Axis Permit, and CPH's Lease Tract on Harbor Island) to be supplemented when transcript is available); Appendix 50 (exhibit produced 01.30.25, as further evidence of dispute of ownership/control of RFB Land for Axis Permit, and CPH Lease Tract on Harbor Island).

[164] Appendix 29; Appendix 41 (GP's Supplemental and Third-Party Petition); and Appendix 49 (Intervenors' Original Petition in Intervention).

[165] Appendix 42 (purported transfer document from GP to RFB); Appendix 43 (GP's bylaws requiring majority approval of GP board of directors to make such a transfer (which Lawrence admits is lacking)).

or not (nothing to do with Ted Powers' alleged contract);[166] (3) Lawrence had RFB Board of Directors' majority approval to transfer Axis out of RFB's ownership/control[167] (nothing to do with Ted Powers' alleged contract); (4) any valid transfer of GP's real property held nominally in Robert's name has been transferred to RBP (again, a GP Board of Directors' majority approval issue[168] – and again, having nothing to do with Ted Powers' alleged contract); (5) any valid transfer of RFB's real property interests have been transferred out of RBP to LSPE or another (again, a RFB Board of Directors' majority approval issue[169] – not a Ted Powers' alleged contract issue); and (6) any valid transfer of CPH's Lease Tract on Harbor Island has been assigned, pledged, or otherwise transferred to HIP[170] (a CPH issue involving its three (3) owners: ALB Trust, MGB Trust, and DWB Trust – and not involving Ted Powers' alleged contract). Nonetheless, the real-parties-in-interest

---

[166] Appendix 42 (purported transfer document from GP to RFB); Appendix 46 (RFB's bylaws requiring majority approval of RFB board of directors for receipt of any such transfer (which Lawrence admits is lacking)).

[167] Appendix 45 (purported transfer document from RFB to LSPH); Appendix 46 (RFB's bylaws requiring majority approval of RFB board of directors to make such a transfer (which Lawrence admits is lacking)).

[168] Appendix 50 (exhibit produced 01.30.25 putting ownership/control of GP's real property (held nominally in the name of Robert as RFB Land for Axis Project) in dispute, although no document has been produced purportedly showing any transfer of GP assets to RBP); Appendix 43 (GP's bylaws requiring majority approval of GP's board of directors to make such a transfer).

[169] Appendix 50 (exhibit produced 01.30.25 putting ownership/control of RFB Land for Axis Project in dispute, although no document has been produced purportedly showing any transfer of RFB assets to RBP); Appendix 46 (RFB's bylaws requiring majority approval of RFB board of directors to make such a transfer).

[170] Appendix 50 (exhibit produced 01.30.25 putting ownership/control of CPH Lease Tract on Harbor Island in dispute, although no document has been produced purportedly showing any transfer of CPH assets to HIP).

are pursuing their broadly pleaded claims in the Harris County Lawsuit and have included disputes belonging to the first-filed lawsuit (in Nueces County) into the second-filed lawsuit (in Harris County). As noted above, Real-parties-in-interest are quite aware of the fact that the two (2) competing cases are interrelated/intertwined, arguing in the Nueces County Lawsuit: 'GP's Nueces Application is "related to the ownership of Axis that is the *very centerpiece* of the Injunction Hearing proceeding in Judge Adrogue's court next week."'[171] Texas law is quite unequivocable that the second-filed action does not enjoy dominant jurisdiction to the exclusion of the first-filed action (this would be opposite day). As such, the second-filed Harris County Lawsuit is properly abated.[172]

In contemplation of the detailed history of how Marty's/GP's/Berry Entities' and others' claims relating to Axis/LSP have been discovered by way of legal process (Requests for Production in the Nueces County Lawsuit), and pleadings amended/supplemented thereafter, the words from the Texas Supreme Court could not be more carefully considered.

---

[171] See Appendix 53 (Lawrence's Nueces Response), at p. 2.

[172] *Cleveland v. Ward,* 285 S.W. 1063, 1069 (Texas 1926); citing *French v. Hay,* 22 U.S. 250, 253 (United States Supreme Court); see also *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988); *In re J.B. Hunt Transportation Inc*., 492 S.W.3d 287, 294 (Texas 2016); and too many other cases to cite in support of this fundamental, time-honored rule. To be clear, Marty, Bonnie, and Axis recognize that – at the appropriate time – the lifting of the abatement of the second-filed action (Harris County Lawsuit) is appropriate. At such time, the parties to the Harris County Lawsuit will inevitably address all issues remaining as between them (i.e., most certainly Powers'/Allied Ports LLC's breach of contract and other claims (such contract claims being the *only* claims subject to the venue / jurisdictional provisions of the alleged contract)).

> "It is not required that the precise issues and all of the parties be included in the first filed suit before the second suit is filed, provided that the claims in the first suit can be amended to bring in all of the necessary and proper parties and claims."[173]

The trial court that acquired jurisdiction of the first-filed action (Nueces County) is the tribunal with dominant jurisdiction. This dominant jurisdiction extends to "amended" claims and "all of the necessary and proper parties and claims." This rule of allowing amendment of claims and adding of parties has long been the law in the State of Texas.

> "When suit was filed in the Johnson County district court, the jurisdiction of that court attached, with power on the part of the court to permit the pleadings to be amended and amplified, new parties to be made, to determine all essential questions, and to do any and all things with reference thereto authorized by the Constitution and statutes, or permitted district courts under established principles of law."[174]

> "[The first-filed case] [h]aving the possession of jurisdiction of the case, that jurisdiction embraced

---

[173] *In re Coronado Energy EP Company,* 341 S.W.3d 479, 481-482 (San Antonio Court of Appeals, 2011); *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 247 (Texas 1988).

[174] *Cleveland v. Ward, 285* S.W. 1063, 1069 (Texas 1926); citing *French v. Hay,* 22 U.S. 250, 253; *Reagan v. Copeland,* 14 S.W. 1031; *Jolley v. Oliver*, 106 S.W. 1152 (Tex.Civ.App.); *I. & G. N. Ry. Co. v. Howell,* 105 S.W. 560 (Tex. Civ. App.); *Hartford Fire Ins. Co. v. City of Houston,* 110 S.W. 973, 116 S. W. 36 (Tex. Civ. App.); *Latham v. Tombs*, 32 Tex. Civ. App. 270, 73 S. W. 1060; *Taylor v. Hulett,* 15 Idaho 265, 97 P. 37;, *Lanes v. Squyres*, 45 Tex. 382; *Foster v. Wright,* 217 S.W. 1091, 1092 (Tex. Civ. App.); see also *Benson v. Fulmore,* 269 S.W. 71 (Tex. Comm. App.); *Bailey v. Fly*, 97 Tex. 425, 79 S. W. 299; *Reed v. Harris*, 37 Tex. 167; *Connoly v. Hammond,* 58 Tex. 11*; McDannell v. Cherry,* 64 Tex. 177; *;Foster v. Wright,* 217 S.W. 1090, 1092 (Tex. Civ. App.).

> everything in the case, and every question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction lasted it was exclusive, and could not be trenched upon by any other tribunal."[175]

Restated: The pleadings in the Nueces County Lawsuit may be "amended" and "amplified," and "new parties may be made." The jurisdiction of Judge Robert Galvan's court has "embraced *everything* in the case, and *every question arising which could be determined in it* . . . ." (emphasis added) "It [is] exclusive, and [can] not be trenched upon by any other tribunal." The scope/breath of the Nueces County Lawsuit extends to all matters pleaded against Lawrence, and those parties added.

All matters now pending in the Nueces County Lawsuit are directly related to and flow from the Counter-Plaintiffs Original Petition Asserting Counter-Claims filed by Marty, GP, and Berry Entities in the Nueces County Lawsuit against Lawrence Berry (January 2024),[176] legal discovery propounded in the Nueces County Lawsuit answered by Lawrence Berry (May 8, 2024),[177] documents (purported transfer documents and by-laws)[178] related to GP, RFB, and CPH, and amended/supplemental pleadings related thereto.[179] Marty, GP, Berry Entities, RFB,

---

[175] *Cleveland v. Ward, 285* S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 22 Wall. (U.S.), 250, 253.
[176] Appendix 6.
[177] Appendix 9.
[178] Appendix 42; Appendix 45; and Appendix 50.
[179] Appendix 41; Appendix 49.

49

LSPE, and CPH are all named-parties in the Nueces County Lawsuit (and none are named in the Harris County Lawsuit – a serious matter per TRCP 39 and TCPRC 37.006 when adjudicating 'control and ownership' issues.[180] To the extent that the "centerpiece"[181] of the matter pending before Judge Adrogue are these 'control and ownership' disputes (and it is), the second-filed (Harris County Lawsuit) is properly abated.

**Step 3**: Are the two (2) lawsuits inherently intertwined/interrelated? Yes, and let us not argue this any further. As per all the litigants petitions, counter-petitions, and multiple applications relating to the matters in dispute, both lawsuits have and have had requests for injunctive relief related to ownership and control of GP, Berry Entities, RFB, Axis, CHP, LSPE, RBP, and/or HIP; and both lawsuits endeavor to address disputes about ownership of Axis, ownership of RFB Land for Axis Project, and disputes about ownership/control of CPH's Lease Tract on Harbor Island.[182] All seemingly now agree the "very centerpiece"[183] of real-parties-in-interest Harris County Lawsuit is the same as matters in dispute in the Nueces County Lawsuit (except the Nueces County Lawsuit named-parties are those claiming ownership of Axis, ownership of RFB Land for Axis, and the CPU Tract

---

[180] See petitions and pleadings cited herein and compare Texas Rule of Civil Procedure 39 and Texas Civil Practice & Remedies Code section 37.006.

[181] See Appendix 53 (Lawrence's Nueces Response), at p. 2.

[182] A full discussion of how the two (2) lawsuits are inherently interrelated/intertwined is set forth above, and with all citations to the many documents supporting such conclusion.

[183] See Appendix 53 (Lawrence's Nueces Response), at p. 2.

Lease now apparently in dispute (such entities named as parties in the Nueces County Lawsuit as required by TRCP39 and TCPRC 37.006)).[184] Counter-Plaintiffs (Marty, GP, and Berry Entities), since January 2024, have been involved in litigation with Lawrence to determine what GP and Berry Entities' assets/ companies have been self-dealt to Lawrence, converted by Lawrence, the subject of fraud by Lawrence, the subject of breach of fiduciary duties by Lawrence, and worse (and all such disputes will be and are properly included in amended pleadings in Nueces County as each is discovered and fully documented).[185]  All such claims in the Nueces County Lawsuit are inherently intertwined/interrelated with the precise relief now being sought in the Harris County Lawsuit.

**Step 4**: What are the public policy considerations?  As one might expect, there are serious and substantial public policy considerations that rightfully drive the result when two (2) Texas courts are simultaneously considering the same issues.

- "Abatement of a lawsuit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues."[186]  Comity asks that the judge in the second-filed action honor the jurisdiction of the judge in the first-filed action.

---

[184] Appendix 6; Appendix 29; Appendix 30; Appendix 41 (GP's Supplemental and Third-Party Petition); and Appendix 49 (Intervenors' Original Petition in Intervention).
[185] Appendix 6; Appendix 29; Appendix 30; Appendix 41 (GP's Supplemental and Third-Party Petition); and Appendix 49 (Intervenors' Original Petition in Intervention).
[186] *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988).

Convenience asks that the first-filed and pending case with at least one of the parties claiming ownership (Marty, Lawrence (Lawrence Trust), GP, and others) be preferred (the Nueces County Lawsuit), and that time and effort dedicated to the first-filed action not be lost (Nueces County already having considered the same injunctive relief now requested in the second-filed action, and extensive legal discovery having been engaged in the Nueces County Lawsuit). And the "orderly procedure" (most importantly) asks of us that two (2) courts not engage in battle for jurisdiction of (power over) the dispute – but rather the second-filed action be abated.

- "The first-filed rule flows from "principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues.""[187] "The default rule thus tilts the playing field in favor of according dominant jurisdiction to the court in which suit is first filed."[188]

- "It is a familiar principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and,

---

[187] *In re J.B. Hunt Transportation Inc.*, 492 S.W.3d 287 (Texas 2016), citing *Wyatt v. Shaw Plumbing Company,* 760 S.W.2d 245, 248 (Texas 1988).
[188] *In re J.B. Hunt Transportation Inc.*, 492 S.W.3d 287, 294 (Texas 2016).

while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process."[189]

- If a matter is pending before more than one (1) court, then there is also the public policy concern of conflicting court rulings: *Phillips v. Phillips,* 651 S.W.3d 112, 120 (Court of Appeals – Houston [14th District] 2021), concurring opinion noting "the ever-expanding problem of subjecting parties to conflicting orders issued by the protective order court and the court in [a related matter that] is pending, at times subjecting opposing parties to a finding of contempt for complying with the order of one court while disregarding or violating a conflicting order of the other court." Relators wish to further avoid conflicting rulings (Judge Robert Galvan having already ruled, and his judicial ruling still in full force and effect).

- Finally, and again, "[The first-filed case] [h]aving the possession of jurisdiction of the case, that jurisdiction embraced everything in the case, and ever question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction lasted

---

[189] *Cleveland v. Ward*, 285 S.W. 1063 (Texas 1926); citing *McLean v. Speed*, 18 N.W. 396.

53

it was exclusive and could not be trenched upon by any other tribunal."[190]

All public policy considerations bode in favor of abating the second-filed action in favor of the first-filed action (given none of the three (3) exceptions apply (and have not been pleaded)). It only makes sense. For the reasons set forth herein, Relators request that mandamus be granted – and that the Harris County Lawsuit be abated until such time as issues appropriately resolved in the Nueces County Lawsuit are timely and finally resolved/adjudicated.

## CONCLUSION AND PRAYER FOR RELIEF

Both cases already involve Lawrence Berry and Marty Berry as named parties. GP, RFB, LSPE, CPH, RBP, and HIP claim ownership/control of entities/assets that are in dispute and thus must be parties to any litigation relating to same (TRCP 39, TCPRC 37.006) – and all are parties (originally or by amended/supplemental pleadings) to the first-filed Nueces County Lawsuit (none in the Harris County Lawsuit). Bonnie may be easily added as a defendant in the Nueces County Lawsuit, although deference to her late-husband's passing has previously allowed her absence from the first-filed matter. Of course, Powers/Allied Ports LLC may intervene in Nueces County (if they so choose), or may be added as a named party, or not (if they choose to later litigate remaining issues in the Harris County Lawsuit after any

---

[190] *Cleveland v. Ward, 285* S.W. 1063, 1068 (Texas 1926); citing *French v. Hay,* 22 U.S. 250, 253 (United States Supreme Court).

abatement is lifted). There are many other examples of how the two (2) cases are "interrelated" and "intertwined," but the larger picture reveals that the core of both disputes is the 'ownership, management, and control' of GP's/RFB's/CPH's/Axis' entities/assets (most notably ICI/Orca and Axis/LSP related assets). First things first: the dispute between GP/RFB and LSPE (the only entities claiming Axis ownership) are as between Berry Brothers (the only purported transfer documents show signatures of Berry Brothers, and the by-laws dispositive of whether such transfers are valid are binding only upon Berry Brothers). Next: the dispute between RFB and RBP (the only entities claiming ownership of RFB Land for Axis Project) involves only Berry Brothers (no one else could have possibly transferred the land out of RFB, and only with majority board of directors' approval to be valid). Finally: the dispute between CPH and HIP (the entities claiming control of the CPH Lease Tract on Harbor Island) involves only Berry Brothers (since ALB Trust (Lawrence trustee), MGB Trust (Marty trustee), and DWB Trust (Dennis then-trustee) are sole owners of CPH, it can only be that one or more of these persons possibly transferred the lease out of CPH with majority board of directors' approval to be valid). Real-parties-in-interest are now saying these disputes are the centerpiece of the Harris County Lawsuit, and this is nothing more than real-parties-in-interests' attempt to say the second-flied lawsuit has dominant jurisdiction. Such is not Texas law, and thus the second-filed action (Harris County Lawsuit) is properly abated.

55

Marty, Bonnie, and Axis, Relators herein, therefore asks that this Honorable Fifteenth Court of Appeals issue a writ of mandamus compelling the Respondent to vacate or otherwise set aside the Order denying Relators' Plea in Abatement/Motion to Abate, thereby granting mandamus relief; and that the Harris County Lawsuit be abated until such time as the Nueces County Lawsuit exhausts its jurisdiction. Relators also pray for such other and further relief, both at law and in equity, to which Relators may show themselves justly entitled.

Respectfully submitted,

**LAW OFFICES OF DOUGLAS ALLISON**
403 N. Tancahua Street
Corpus Christi, Texas 78401
T:    361-888-6002
F:    361-888-6651
E:    doug@dallisonlaw.com

BY:    */s/ Douglas A. Allison*
       **DOUGLAS A. ALLISON**
       State Bar No. 01083500

**ROBERTS MARKLAND LLP**
2555 N MacGregor Way
Houston, Texas 77004
E:    vg@robertsmarkland.com

BY:  */s/ Vanessa D. Gilmore*
      **VANESSA D. GILMORE**
      State Bar No. 07960010

      ATTORNEYS FOR RELATORS
      MARTY BERRY AND AXIS
      MIDSTREAM HOLDINGS, LLC

## CERTIFICATION OF PETITION

I certify that I have reviewed this petition and concluded that every factual statement in the petition is supported by competent evidence included in the record or in the appendix to the petition.

      */s/ Douglas A. Allison*
      DOUGLAS A. ALLISON

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on February 10, 2025, I conferred with Alistair Dawson and Barrett Reasoner (counsel for Plaintiffs / Real Parties in Interest) concerning this filing. They both confirmed they are opposed to the requested relief.

      */s/ Douglas A. Allison*
      DOUGLAS A. ALLISON

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4(i)(1)

I hereby certify that this document complies with Rule of Appellate Procedure 9.4, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i), it contains 13,685 words. The document also complies with the typeface requirements of Tex. R. App. P. 9.4(e), as it was prepared in a proportionally spaced typeface using Microsoft Word for Mac in Times New Roman 14 pt. font for text and 12 pt. font for footnotes.

 */s/ Douglas A. Allison*
**DOUGLAS A. ALLISON**

## CERTIFICATE OF SERVICE

On February 11th, 2025, true and correct copies of the foregoing document were served on the following persons through the Court's electronic case filing system:

Alistair B. Dawson
Mary Kate Raffetto
M. Jake McClellan
Madeline E. Gay
BECK REDDEN
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
T: (713) 951-3700
E: adawson@beckredden.com

*Counsel for Real Party-in-Interest*
*Albert Theodore Powers*

Roland Garcia
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
T: (713) 374-3500
F: (713) 374-3505
E: garciar@gtlaw.com

*Counsel for Real Party-in-Interest*
*Allied Ports, LLC*

Barrett H. Reasoner
Michael R. Absmeier
L. Bruce Baldree
Sydney G. Ballesteros
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
T: 713.650.8805
F: 713.750.0903
E: breasoner@gibbsbruns.com

*Counsel for Real Party-in-Interest*
*Allen Lawrence Berry*

*/s/ Douglas A. Allison*
**DOUGLAS A. ALLISON**

## <u>VERIFICATION OF APPENDIX</u>

STATE OF TEXAS          §

COUNTY OF NUECES       §

Before me, the undersigned notary, on this day personally appeared Douglas A. Allison, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Douglas A. Allison. I am of sound mind and capable of making this affidavit. The facts in this affidavit are within my personal knowledge and are true and correct.

"I am serving as counsel for the relater. All of the documents included in the appendix to this petition are true copies."

*/s/ Douglas A. Allison*

Kim Brunkenhoefer
NOTARY SIGNATURE

KIM BRUNKENHOEFER
Notary ID #5348297
My Commission Expires
August 4, 2025

8 - 4 - 25
COMMISSION EXPIRATION

60

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Susan Gonzales on behalf of Douglas Allison
Bar No. 1083500
susan@dallisonlaw.com
Envelope ID: 97227503
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus with Oral Argument Requested
Status as of 2/11/2025 1:08 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Vanessa AGilmore | | vg@robertsmarkland.com | 2/11/2025 10:59:21 AM | SENT |
| Alistair Dawson | 5596100 | adawson@beckredden.com | 2/11/2025 10:59:21 AM | SENT |
| Roland Garcia | 7645250 | garciar@gtlaw.com | 2/11/2025 10:59:21 AM | SENT |
| Barrett Reasoner | 16641980 | breasoner@gibbsbruns.com | 2/11/2025 10:59:21 AM | SENT |
| Michael Absmeier | 24050195 | mabsmeier@gibbsbruns.com | 2/11/2025 10:59:21 AM | SENT |
| Douglas Allison | 1083500 | doug@dallisonlaw.com | 2/11/2025 10:59:21 AM | SENT |
| Susan KGonzales | | susan@dallisonlaw.com | 2/11/2025 10:59:21 AM | SENT |
| Kim Brunkenhoefer | | kim@dallisonlaw.com | 2/11/2025 10:59:21 AM | SENT |